FILED
2003 NOV -6 AM 8:46
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ENTERED
NOV 06 2003

| | |
|---|---|
| DEBORAH F. STEWART, | ) |
| Plaintiff, | ) |
| v. | ) CASE NO. CV-01-TMP-1763-S |
| ANTHONY J. PRINCIPI, SECRETARY OF VETERANS AFFAIRS, AND THE DEPARTMENT OF VETERANS AFFAIRS, | ) |
| Defendants. | ) |

### MEMORANDUM OPINION

This action is before the court on a motion for summary judgment filed March 31, 2003, by the defendants, Anthony J. Principi, Secretary of the Department of Veterans Affairs, ("Principi"), and the Department of Veterans Affairs ("the Department"). The motion has been supported by exhibits and a memorandum of law. The plaintiff filed a brief in opposition, accompanied by an evidentiary submission. The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c); accordingly, the court enters this memorandum opinion. Having considered the pleadings and submissions, as well as the relevant law, the court finds that the motion for summary judgment is due to be granted.

## I.   SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Celotex, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." Id. at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own

affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting Fed. R. Civ. P. 56(e)). When the nonmoving party does not respond, "summary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ. P. 56(e).

The nonmoving party may not merely rest on her pleadings. Celotex, 477 U.S. at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

After the plaintiff has had the opportunity to respond to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at

249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52; see also Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n.11 (1983).

## II. FACTS

The defendant seeks summary judgment on the plaintiff's claims that she was discriminated against on the basis of her race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. The plaintiff asserts that her employer, the Birmingham Veterans Administration Medical Center ("the VA Hospital"), which is operated by the Department, treated white, similarly-situated employees more favorably than the plaintiff. Specifically, she asserts racial discrimination in her termination because white employees were not terminated under similar circumstances. Defendants assert that the Department is not a proper defendant and that all claims against Principi are due to be dismissed because plaintiff has failed to demonstrate a prima facie case of race discrimination.

The plaintiff, Deborah F. Stewart, is a black female who was employed at the VA Hospital for more than 10 years. She worked at

all relevant times as a permanent part-time staff nurse in the Medical Intensive Care Unit. She worked 12-hour shifts every Thursday and Friday, and every other Saturday and Sunday.

On July 8, 1999, Stewart was terminated. A termination letter written by Juan A. Morales, Associate Chief of Staff for Patient Care Services, stated that she was being fired due to "being absent without official leave" when she was late to work on April 29, 1999, and May 6, 1999, and was absent for her entire shift on May 28, 1999. Morales is a Hispanic male. Stewart alleges that she was fired because of her race, but she argues also that Judy Webb, the Head Nurse, had a "personal grudge against" Stewart because Stewart drafted a letter in 1993, signed by 31 nurses at the VA Hospital, that stated a number of concerns the nurses shared about Webb. (Plaintiff's brief at pp. 2, 4). Plaintiff asserts that Webb tried "to build a case to get Ms. Stewart fired" after the letter was written by reporting Stewart for tardiness and abuse of sick leave. Webb was Stewart's direct supervisor from 1991 until 1999. Like plaintiff, Webb is a black female. (Def. Ex. 1, p. 2).

Beginning in 1996, Morales became Chief of Nursing Service, supervising both Webb and Stewart. Also in 1996, Jane Hebb, a white female, became a supervisor with responsibility over both Webb and Stewart. Morales and Hebb began a "concerted effort" in 1996 to improve time and attendance issues among the nurses, and

began to more strictly enforce time and attendance rules than had previous supervisors.

Stewart had a history of issues concerning her use of sick leave and tardiness that dated to 1992. Stewart had been warned and/or counseled in writing about her attendance problems in October 1992, April 1993, January 1994, May 1994, October 1995, January 1996, July 1996, September 1996, and February 1997. On February 4, 1999, Webb issued a written memorandum warning, telling Stewart that failure to improve her attendance could result in termination, which defendants refer to as a "last chance" letter.

Webb reported that Stewart was tardy on April 29, 1999, and May 6, 1999, and was absent without properly requesting leave on May 28, 1999. Stewart admits that she was tardy on April 29, 1999, but denies that she was tardy on May 6, 1999. She further alleges that she had properly reported her absence on May 28, 1999.[1] Webb

---

[1] Plaintiff attempts to litigate whether she was actually tardy on May 6, and whether she properly reported her use of sick leave on May 28. These facts, however, are relevant only as to whether the defendant had a legitimate reason for plaintiff's termination. If the decision-makers knew that plaintiff was not guilty of the misconduct she was accused of, then that fact would support a finding that the reason is pretextual. In this case, however, plaintiff does not argue that Hebb and/or Morales actually knew that plaintiff was not guilty of the May 28 absence or the May 6 tardiness. Plaintiff does argue that Webb knew she was going to be absent on May 28 and should not have considered that absence to be wrongful; but, even if true, plaintiff concedes that Webb's reason for seeking plaintiff's termination was not one of racial animus, but a personal grudge arising from a letter plaintiff wrote.

had the authority to excuse a nurse for being a few minutes late. Webb never excused Stewart's tardiness.[2] Morales, Webb, and Hebb discussed Stewart's attendance during a meeting in May or June of 1999 and agreed that termination was appropriate. Morales made the final decision to terminate Stewart. After she was terminated, Stewart wrote a letter to Y.C. Parris, Director of the VA Hospital. He held a "brief, perfunctory meeting" with Stewart and then approved the termination.

Stewart asserts that white nurses in her unit at the VA Hospital have committed acts "worse" than Stewart's tardiness or absence, yet were not terminated. Specifically, Stewart names several nurses who, she alleges, committed errors in patient care, such as administering the wrong medication or sleeping while on the job. Stewart names one white nurse, Jane House, who was allowed to resign after excessive absences in lieu of termination, and who was subsequently re-hired by a separate department within the VA Hospital. House resigned in 1995; she was hired by a research department at the VA Hospital in 1999.

---

[2] Although plaintiff offers evidence that at least one other supervisor excused some tardiness, the only evidence that Webb ever excused any tardiness comes through the deposition of Lisa Little, who merely stated that she knew of other nurses who had been excused by Webb. When asked if the excused nurses were white, Little answered: "Not necessarily." Because there is no evidence that excuses were given in a discriminatory fashion, plaintiff's argument relating to excused absences is without any foundation in fact or law and need not be discussed further.

### III.  DISCUSSION

#### A.  Proper Claims and Defendants

The defendants move for summary judgment on all of plaintiff's claims against the Department of Veterans Affairs and on any claims plaintiff may have asserted that do not arise from Title VII. Plaintiff has not filed any argument in opposition to the motion as to the Department, or relating to any claims vaguely asserted in the complaint pursuant to the Fifth Amendment.

The court agrees with defendants that the only claims plaintiff may assert based upon her employment as a federal employee arise from Title VII because any other claims for wrongful termination against the federal government are subject to sovereign immunity.  See Brown v. General Services Administration, 425 U.S. 820, 833 (1976)(holding that Title VII proves exclusive judicial remedy for employment discrimination for federal employees). Moreover, the head of the agency alleged to have discriminated against a federal employee is the only proper defendant in a federal sector Title VII case.  Canino v. United States E.E.O.C., 707 F.2d 468, 472 (11th Cir. 1983).  Accordingly, only plaintiff's claim for discriminatory termination, pursuant to Title VII, states a claim upon which relief may be granted, and any other claims are

due to be dismissed. Similarly, the sole claim in this case may be brought only against defendant Principi, as head of the Department of Veterans Affairs, the agency alleged to have discriminated against the plaintiff. Accordingly, all claims against the Department are due to be dismissed.

### B.  Title VII

#### 1.  *Prima Facie* Case

Title VII prohibits discrimination with respect to an employee's "compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). To establish a *prima facie* case of disparate treatment on account of race, a plaintiff must show that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she is qualified to do the job; and (4) her employer treated similarly situated employees who are not members of the protected class more favorably. See Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999). A disparate treatment claim requires proof of discriminatory intent, either through the use of direct or circumstantial evidence. See, e.g., Equal Employment Opportunity Commission v. Joe's Stone Crab Inc., 220 F.3d 1263, 1286 (11th Cir. 2000). Direct evidence establishes that intent without the need for any inference or

presumption. Id., quoting Standard v. A.B.E.L. Servs. Inc., 161 F.3d 1318, 1330 (11th Cir. 1998). Where there is no direct evidence, the plaintiff must prove intent through circumstantial evidence in accordance with McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). There is no direct evidence of discrimination in this case.

Plaintiff has shown that she is a member of a protected class because of her race and that she has suffered an adverse job action in that she was terminated. Plaintiff's *prima facie* showing, therefore, turns on whether she has demonstrated that similarly-situated non-black nurses were treated more favorably. It is well established that for plaintiff to prove her allegations of racial discrimination with respect to her disciplinary termination, she must demonstrate that a "similarly situated" non-black employee at the VA Hospital engaged in "similar misconduct" to that of the plaintiff and was treated more favorably. Anderson v. WBMG-42, 253 F.3d 561, 565 (11th Cir. 2001). The law does not require that the comparators engaged in "identical misconduct," but similar misconduct must be shown. See also, Alexander v. Fulton County, 207 F.3d 1303, 1333-34 (11th Cir. 2000), and cases cited therein.

> To show that employees are similarly situated, the plaintiff must show that the "employees are similarly situated in all relevant respects.... In determining whether employees are similarly situated... it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways."

Knight v. Baptist Hosp. of Miami, Inc., 330 F.3d 1313, 1316 (11th Cir. 2003)(quoting Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997)).

Furthermore, it is not the duty of this court to evaluate whether the decision to terminate Stewart was fair or wise; employers are free to make unfair or unwise employment decisions so long as they do not violate anti-discrimination statutes. See Elrod v. Sears, Roebuck and Co., 939 F.2d 1466, 1470 (11th Cir. 1991). Questionable business judgment is not evidence of discrimination. See id.

Plaintiff cites five instances in which she claims non-black nurses were treated more favorably than she: (1) a white nurse started an IV in a man's chest, a prohibited and dangerous practice, and was not terminated, (2) a white nurse irrigated a patient's IV with potassium chloride, causing cardiac arrest, and was not terminated; (3) a white nurse routinely slept on the job and was not terminated; (4) a white nurse performed her duties while under the influence of mind-altering drugs and took pain medication meant for a patient and was not terminated; (5) a white nurse used excessive leave and was allowed to resign rather than be terminated, and subsequently was rehired. The defendant asserts that none of the alleged comparators is similarly situated because: (a) the white nurses cited by plaintiff for medication errors or sleeping on the job did not commit infractions similar to the

-11-

tardiness/sick leave infractions committed by the plaintiff; and, (b) the only nurse mentioned by plaintiff who had a poor attendance record worked in the nursing unit long before plaintiff was fired, had different disciplinary rights because she was a full-time nurse, and was not supervised by either Morales or Hebb.

In this case, nurses who committed errors in medication administration or committed misconduct related to patient care present different issues than that presented by the plaintiff, who apparently had a long history of excessive absences and tardiness. While the plaintiff argues, and the court may agree, that mistakes in patient care are more egregious than attendance problems and ought to be punished more severely, the fact that the VA Hospital treats attendance problems with more severe consequences than it treats patient-care issues does not demonstrate racial discrimination. "Title VII does not take away an employer's right to interpret its rules as it chooses, and to make determinations as it sees fit under those rules." Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1187 (11th Cir. 1984). In short, the four nurses who allegedly committed patient-care errors are not comparators to the plaintiff, who was terminated solely on the basis of her attendance record.

Plaintiff points to only one other nurse whose discipline problems were related to attendance. Jane House was a registered nurse and worked in the same unit as plaintiff. Plaintiff alleges

that House was allowed to resign instead of being fired in 1995 after alleged abuse of leave time. House was re-hired by the manager of another department at the VA Hospital four years later.[3] Plaintiff does not, however, provide evidence concerning the extent or seriousness of House's attendance problems. Webb testified that House resigned after attendance problems, but her testimony does not fully indicate the nature or severity of the problems.[4] There is simply no evidence that House had a record of tardiness or excessive leave that was similar to the plaintiff's. There is no evidence that House's attendance issues were long-standing or that

---

[3] Defendants argue that House is not a comparator because she was a full-time nurse entitled to certain rights under Veterans Administration regulations that provide progressive disciplinary procedures and a review prior to termination, and Stewart was a part-time nurse not entitled to the same rights. The court finds that such a distinction would not, of course, excuse any intentional discrimination. At the same time, however, it is at least conceivable that a nurse subject to these regulations may have been allowed to resign rather than be terminated because, from the employer's viewpoint, a resignation would remove the need for any review. In any event, it is clear that House suffered the same ultimate fate – loss of her employment. While this fact does not dispose of any issue at hand, it could be seen to lend credence to defendants' legitimate, non-discriminatory reason for the termination. As for the issue of eligibility of rehire, there is no evidence that Stewart was deemed ineligible for rehire or that she has sought rehire at the VA Hospital.

[4] The court notes that it appears that plaintiff entered three pages of documents relating to House into the record during Webb's deposition, but those documents were not offered as evidence in opposition to the instant motion. In an affidavit, Webb states that House was warned "several times" about her absenteeism during the last two years she worked at the VA Hospital. It appears that House violated the attendance rules "on several occasions" over a two-year period.

House had received more than one or two warnings, while plaintiff received 10 written warnings over the span of about seven years. Accordingly, while both House and Stewart were warned about attendance issues, there is no evidence that the attendance problems constituted "similar misconduct."

House's situation is different than Stewart's for another reason. House resigned four years before Stewart was fired, and the year before new supervisors, Hebb and Morales, instituted a stronger emphasis on attendance issues.[5] There is simply too little evidence for the court to speculate as to whether House may have been "similarly situated" to plaintiff in light of the sparsity of evidence relating to House's infractions and the uncontroverted evidence that Hebb and Morales enforced the attendance policy more stringently on all employees than had previous supervisors. In sum, the plaintiff has failed to meet her burden of coming forward with evidence sufficient to overcome the

---

[5] Defendants argue that because two new decision-makers were involved in the Stewart decision and were not involved in the House decision, that the two employees are not "similarly situated." The court recognizes that the involvement of different supervisors in a disciplinary decision is not determinative of the issue, but that different management priorities may account for the disparate treatment an employee complains of. Anderson, 253 F.3d at 566. In this case, defendants have shown that the managerial style and emphasis employed by Hebb and Morales was different than the style of the previous managers, and that attendance issues were treated more strictly across the board. See also Jones v. Bessemer Carraway Medical Center, 137 F.3d 1306, 1312 note 7 (11th Cir. 1998) modified on a different ground on reh'g, 151 F.3d 1321 (11th Cir. 1998).

well-supported motion for summary judgment filed by the defendants.

Even if House were viewed as a similarly situated employee, plaintiff's claims of discrimination must fail because nothing in the case argued by the plaintiff even hints at any racially-motivated animus. Plaintiff asserts that the real reason behind her termination was that Judy Webb, a black supervisor, had a "personal grudge" against the plaintiff arising from a letter plaintiff wrote to VA Hospital management in 1993. Plaintiff does not assert, and there is no evidence to support, that the grudge was race-based. To the contrary, Webb had the alleged "grudge" because plaintiff wrote a letter critical of another supervisor. Nowhere does plaintiff assert that Webb was motivated, even to a small extent, by plaintiff's race. Rather, plaintiff concedes that Webb's motivation was solely based upon her displeasure over the letter. Similarly, plaintiff does not allege that either of the other two decision-makers had any racial animus or that anyone at the VA Hospital ever uttered a racial epithet or made any comment that might be construed as racially insensitive during the 10 years that plaintiff worked there. Even if the decision to terminate Stewart was unfair or unwise, it is not actionable unless it was motivated by racial bias. Cf. Pipkins v. City of Temple Terrace, Fla., 267 F.3d 1197 (11th Cir. 2001)(sex discrimination claim fails where action of supervisor had a personal animus, not sexual bias); Succar v. Dade County School Board, 229 F.3d 1343 (11th Cir.

2000)(motivation based personal animus, but not sexual bias, not actionable under Title VII).

Accordingly, even if all of plaintiff's assertions are true, plaintiff has proven only that the VA Hospital punished attendance problems more severely than patient-care problems and that one manager at the VA Hospital, who also is black, had a "personal grudge" against the plaintiff based on plaintiff's conduct, not her race. At most, plaintiff has proven that she was treated unfairly because she wrote a letter critical of a supervisor.[6] These facts do not support a claim under Title VII; therefore, defendants' motion for summary judgment is due to be granted.

2.  Pretext

Where the plaintiff has succeeded in establishing a *prima facie* case, the presumption of discrimination may be rebutted if the employer offers a legitimate, nondiscriminatory reason for the employment action. Once the employer meets its burden of articulating a non-discriminatory reason, the burden shifts back to the plaintiffs to show that the reason either is not worthy of belief or that, in light of all the evidence, a discriminatory

---

[6] There is no allegation that the letter was any sort of complaint about a discriminatory practice or that the letter was a "protected activity" that might give rise to a Title VII retaliation claim, and the complaint states only a claim for disparate treatment in that Stewart was wrongfully terminated on account of her race, not a Title VII retaliation claim.

reason more likely motivated the decision than the proferred reason. Standard v. A.B.E.L. Servs. Inc., 161 F.3d 1318, 1331-33 (11th Cir. 1998), citing Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997), cert. denied, 118 S. Ct. 685, 139 L. Ed. 2d 632 (1998). In evaluating the defendant's proffered reason, the court should determine whether the plaintiff has demonstrated "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's articulated reason for the termination that it is "unworthy of credence." Combs, 106 F.3d at 1538 (citations omitted).

Defendant has asserted that Stewart was fired because her supervisors had decided to take a firm stand against tardiness and abuse of sick leave, and because Stewart had a history of absentee-related problems that she failed to improve. Because the defendant has offered a non-discriminatory reason for the termination, plaintiff must, in order to overcome the motion for summary judgment, demonstrate by competent, admissible evidence that the defendant's non-discriminatory reason is merely pretextual. She must show not only that the articulated reason is false, but also that the defendant's true reason for the termination was discriminatory. See Clark v. Coats & Clark, Inc., 990 F.2d 1217, 1228 (11th Cir. 1993). As discussed in Section III B, *supra*, plaintiff has failed to offer any evidence that supports her contention that defendant's asserted reason for firing her is

false, or that the true reason for the termination was discriminatory. The fact that one other nurse was allowed to resign, instead of being fired, four years before the plaintiff was fired and that the resignation came a year before two new supervisors implemented more stringent attendance policies does not demonstrate pretext.[7] Accordingly, the motion for summary judgment is due to be granted.

## IV. CONCLUSION

Accordingly, consistent with the foregoing discussion of the evidence presented by both parties in support of and in opposition to the motion for summary judgment, this court determines that defendants' motion for summary judgment against plaintiff is due to be granted as to all of plaintiff's claims. Consequently, the claims are due to be dismissed with prejudice. A separate order will be entered contemporaneously herewith dismissing the claims.

Dated the 5th day of November, 2003.

T. MICHAEL PUTNAM
CHIEF MAGISTRATE JUDGE

---

[7] Defendant also notes that, in 1995 when House resigned, the plaintiff, who had a history of tardiness and sick leave abuse that then spanned more than three years, was not terminated or threatened with termination at that time, when a white nurse was told she would be fired if she did not resign.